UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BOROUGH OF UPPER SADDLE RIVER, NEW JERSEY,
KAREN MILLER, ROY OSTROM, MARIA FLORIO,
MARK RUFFOLO, and LINDA MCDONALD,

        Plaintiffs,

- against -

ROCKLAND COUNTY SEWER DISTRICT #1,

        Defendant.

No. 07-CV-0109 (ER)(PED)

ECF Case

**STATEMENT PURSUANT TO RULE 56.1 OF THE LOCAL RULES OF THE UNITED STATES DISTRICT COURTS FOR THE SOUTHERN AND EASTERN DISTRICTS OF NEW YORK**

---

Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York, Defendant Rockland County Sewer District #1 (the "District") states that there are no genuine issues to be tried with respect to the following material issues of fact:

1. On May 10, 2006, the New York Department of Environmental Conservation (the "DEC") and the District entered into an Order on Consent aimed at eliminating all sanitary sewer overflows ("SSOs") emanating from the District's separate sanitary sewer system (the "System") in certain areas throughout Rockland County (the "County"). (Order on Consent Case No. R3-20060201-18, Exh. 2; Affidavit of Dianne Philipps ("Philipps Aff.") at ¶ 3; Collection System Evaluation and Engineering Report for Order on Consent Compliance, Rockland County Sewer District No. 1, Rockland County, NY, June 2007, Revised November 2007, Revised January 2008, Volume 1, Exh. 3).

2. One such area, a relatively small portion of System tributary to the Saddle River and the saddle river pump station, is the location at which all of the SSOs that form the basis of Plaintiffs' citizen suit occurred. (Philipps Aff. at ¶ 3).

3. To properly address the System's SSO issue, the 2006 Consent Order outlined steps to be taken and set forth a compliance schedule aimed at eliminating all SSOs in the identified areas. (Exh. 2; Exh. 3 at 1-6; Philipps Aff. at 3).

4. The Order levied civil penalties and required the District to provide two reports to study the causes of the SSOs in these areas and to develop an implementation schedule for addressing those causes, requirements the District satisfied. (Exh. 2 at ¶ I, 4-5).

5. Once approved, the remedial action determined by the studies to be taken to eliminate SSOs and the schedule developed for the implementation of that remedial action became part of, and enforceable under, the Consent Order. (Exh. 2 at 2, 5).

6. The two reports it submitted identified the sources of the SSOs within the cited areas and provided an implementation schedule expressly aimed at eliminating those SSOs, and ultimately implemented all of the remedial measures required by those reports. (Philipps Aff. at ¶¶ 3-6; Exh. 3; Dry Weather SSO Abatement Report dated December 22, 2006 and Supplemental Dry Weather SSO Abatement Report dated June 29, 2007, Exh. 4).

7. With respect to the implementation of the remedial measures required by the Order, following the execution of the Consent Order, and in compliance with it, the District ordered engineering studies to evaluate the system and the District's operation, identified the major causes of SSOs in the problem areas, and began major capital improvement and other engineering and construction projects aimed at identifying and eliminating the causes of SSOs in

the cited areas, including the portion of the System in the area tributary to the Saddle River. (Philipps Aff. at ¶ 5).

8. This effort included (but was not limited to): identifying – through smoke testing, dye testing, manhole inspection, etc. – and removing major sources of inflow in the system, modifying and/or repairing manholes and manhole covers in connection with that work, rerouting certain flow through capital improvement, installing new pumps and upgrading certain pump facilities, and installing new computerized telemetry systems. (*Id.*).

9. The District spent approximately $12 million improving its system in response to the Consent Order and an additional approximately $18.5 million in improvements undertaken of its own volition. (*Id.* at ¶ 6).

10. Since the completion of that implementation at the end of 2011, there have been no reported CWA violations resulting from SSOs in the areas tributary to the Saddle River. (Bell Supplemental Expert Report, Exh. 12 at 2-3).

11. Plaintiffs initiated this action subsequent to the execution of the 2006 Consent Order. (Docket Sheet, Exh. 14 at ¶ 14; Exh. 2 at 3].

Dated:  Providence, Rhode Island
        March 29, 2013

                      Respectfully submitted,

                      PANNONE LOPES DEVERAUX & WEST LLC


                By: s/Thomas R. Gonnella
                    tgonnella@pldw.com
                    317 Iron Horse Way, Suite 301
                    Providence, Rhode Island
                    Tel: (401) 824-5100
                    Fax: (401) 824-5153

*Attorneys for Defendant Rockland County Sewer District #1*

THE LAW OFFICES OF PETER ADELMAN
Peter Adelman

95 6th Avenue
Brooklyn, New York 11217
Tel: (718) 783-3500
Fax: (718) 228-9256

*Special Counsel to Pannone Lopes Devereaux & West LLC*

4